2015 OK 71

**STATE of Oklahoma ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Robert John NICHOLS, Respondent.**

**No. SCBD–6293.**

Supreme Court of Oklahoma.

Oct. 27, 2015.

## ORDER APPROVING RESIGNATION FROM OKLAHOMA BAR ASSOCIATION PENDING DISCIPLINARY PROCEEDINGS

¶ 1 Before this Court is an affidavit filed by Robert John Nichols in the above-styled bar disciplinary action, pursuant to Rule 8.1, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1–A, requesting that he be allowed to resign his membership in the Oklahoma Bar Association and relinquish his right to practice law, and Complainant's Application for Order Approving Resignation.

¶ 2 **THE COURT FINDS AND HOLDS:**

¶ 3 During the pendency of disciplinary proceedings against him, Robert John Nichols (Respondent) offered, on October 5, 2015, to surrender his license to practice law and to resign from Bar membership.

¶ 4 Respondent's act of surrender and resignation was freely and voluntarily made without coercion or duress. Respondent is fully aware of the legal consequences that will flow from his resignation.

¶ 5 Respondent is fully aware that there is a four count Complaint filed against him currently pending before the Oklahoma Supreme Court, alleging violations of professional duties and oath of an attorney. Respondent is also aware of pending investigations by the Bar's general counsel into grievances made against him including five additional investigations since the Complaint was filed. If proven, the Respondent is aware the allegations related to these grievances would constitute violations of Rules 1.15(a) and (d), and 8.4(c), Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2011, ch. 1, app. 3–A and Rule 1.3, RGDP, as well as his oath as an attorney.

¶ 6 The grievances are as follows:

### COUNT I: *Ralph Mackey Grievance*

¶ 7 Respondent represented Ralph Mackey in a condemnation case filed in Osage County, *City of Tulsa v. Ralph Mackey et al.*, Case Number CV–2009–394.

¶ 8 The condemnation commissioners' report awarded landowner Ralph Mackey (Mackey) $265,000.00 which was appropriately disbursed to Mackey and Respondent. In addition, the City of Tulsa and Mackey agreed to settle all property damage claims in the case for an additional payment of $198,332.00.

¶ 9 Respondent received a check from the City of Tulsa for the $198,332.00. He endorsed his name and Mackey's name on the check and deposited it into his IOLTA account. There is no proof Respondent disbursed to Mackey his share of the property damage award.

¶ 10 Several months later, another attorney, Mr. Lindsey (Lindsey), represented Mackey on a different matter and requested an update from Respondent. Respondent did not respond.

¶ 11 Lindsey filed a bar complaint on February 27, 2015. Lindsey on behalf of Mackey was also forced to file a Petition in Osage County to recover the money on March 27,

2015; Osage County District Court, Case Number CJ–2015–64. The Petition alleges the Respondent and his law partner took possession of Ralph Mackey's funds and prevented him from having any access to the funds.

¶ 12 On April 1, 2015, a settlement agreement was entered into between Mackey and Respondent to settle the lawsuit. The settlement agreement which is signed by Respondent, provides that Respondent received $198,332.00 for and on behalf of Mackey and Respondent unlawfully converted these funds from his client trust account for personal use, and in so doing prohibited Mackey from the use of those funds in excess of eight (8) months. The agreement also requires Respondent to pay damages to Mackey in the amount of Two Hundred and Fifty Thousand Dollars ($250,000.00) within 90 days.

¶ 13 On April 6, 2015, the Oklahoma Bar Association ("OBA") opened a formal investigation regarding Lindsey's allegations against Respondent.

¶ 14 Complainant's review of Respondent's bank records suggests that Respondent has deprived Mackey of the settlement funds collected on his behalf and has misappropriated the same for his own benefit. Complainant's investigation confirmed Respondent also failed to notify Mackey of the receipt of these funds and failed to promptly deliver them to his client.

¶ 15 Complainant alleges Respondent has misappropriated all of Mackey's settlement funds and has failed to account for the remaining funds in his client trust account and such conduct violates the mandatory provisions of Rules 1.15(a) and (d), and 8.4(c) ORPC and Rule 1.3 RGDP, and warrants the imposition of professional discipline.

### COUNT II: Fikes Center, Inc. Grievance

¶ 16 On September 29, 2009, Respondent represented Fikes Center, Inc. in a condemnation case; *State of Oklahoma, ex rel., Department of Transportation v. Fikes Center Inc., et al.,* Tulsa County District Court, Case Number CJ–2009–6273.

¶ 17 On August 10, 2010, just compensation was awarded to Fikes Center, Inc., in the amount of $2,395,550.00. Respondent paid Fikes Center, Inc., their share of those proceeds. On April 15, 2013, a check from Fikes Center, Inc. was deposited to Respondent's IOLTA account in the amount of $162,000.00. Paul Allen (Allen), the owner of Fikes Center, Inc., said the $162,000.00 check was money the Oklahoma Department of Transportation (ODOT) required Allen to place in escrow for future demolition costs related to his property and an ongoing condemnation action. Respondent, as counsel for Allen, and ODOT agreed the money would be placed in an escrow account until final costs for the property modifications were completed.

¶ 18 When Allen requested the money, Respondent claimed he had made a mistake and deposited the $162,000.00 into a personal account as opposed to his IOLTA or separate escrow account. Respondent claimed the Internal Revenue Service (IRS) took the entire amount of money pursuant to a tax levy placed on the account. This required Allen to use personal funds to pay contractors.

¶ 19 Complainant's investigation revealed that Respondent actually deposited the ODOT money into his trust account and then transferred portions of the money to other banking accounts in his name; on April 15, 2013, a $16,000.00 transfer was made from Respondent's IOLTA Arvest account to another of Respondent's Arvest checking accounts and on April 22, 2013, a $25,000.00 transfer was made from Respondent's IOLTA to another of Respondent's Arvest checking account.

¶ 20 Complainant's investigation also revealed that the beginning balance of Respondent's Arvest IOLTA in May of 2013 was $55,672.72 which is significantly lower than the $162,000.00 that should have been held in trust for the Fikes Shopping Center case. In addition, on May 1, 2013, Respondent transferred $60,000.00 from his Arvest IOLTA to another of Respondent's Arvest checking accounts. The annotation on the transfer ticket was "Fikes."

¶ 21 Allen did not get his money back for several months. Respondent paid the money back in 3 separate installments. The first

installment to Allen was paid on October 25, 2013, in the amount of $22,000.00. The second installment was paid on December 22, 2013, when Respondent issued a $12,000.00 check to Fikes Center. On August 27, 2014, Respondent issued a $128,000.00 check to Fikes Center. The Complainant determined that this check would have been written five days after Respondent deposited the Mackey settlement into his IOLTA on August 21, 2014.

¶ 22 All three of the checks written to Fikes were paid from Respondent's Arvest IOLTA, indicating to the Complainant, that Respondent was using new client funds to pay back his theft from his clients. Complainant's review of Respondent's bank records indicates that Respondent deprived Allen of the escrow funds accepted on his behalf for 16 months and misappropriated these funds for his own benefit. Complainant asserts that Respondent did not enter into a proper and ethical business transaction with Allen for the loan of funds and he failed to promptly deliver funds to his client upon demand.

¶ 23 Complainant alleges Respondent's conduct violates the mandatory provisions of Rules 1.15(a) and (d), and 8.4(c) ORPC and Rule 1.3 RGDP, and warrants the imposition of professional discipline.

### COUNT III: Fern Sunderland, David and Sharon Dobson Grievance

¶ 24 Respondent practices law with Brian Curthoys (Curthoys), his nephew, with whom he shares the same client trust account. The shared IOLTA bank records indicate deposits and withdrawals related to condemnation cases and their clients.

¶ 25 On September 12, 2013, Curthoys entered his appearance in *City of Tulsa v. Fern Maxine Sunderland, Sharon K. Dobson et al.*, Tulsa County District Court, Case Number CJ–2013–2809. On October 11, 2013, Curthoys received a check in the amount of $60,000.00 as just compensation for two parcels of land owned by the Sunderland and the Dobsons. One parcel of land garnered $39,000.00 while the second parcel garnered $21,000.00.

¶ 26 On October 11, 2013, the Tulsa County Court Clerk issued a check made payable to David and Sharon Dobson and Fern Sunderland in the amount of $60,000.00. On October 21, 2013, that check was deposited into Respondent's IOLTA. On October 17, 2013, a check was written from Respondent's IOLTA and made out to Curthoys for $5000.00. The notation on the check stated "Dobson Fee." On October 25, 2013, Respondent wrote a check to himself from his IOLTA in the amount of $2000.00. The notation on the check read "Dobson Fee." On the same day, Respondent sent a check drawn on his IOLTA to Fikes Center, Inc., In the amount of $22,000.00.

¶ 27 During Complainant's investigation, the Dobsons reported they were represented by Respondent and that they had never met or spoken with Curthoys. The Dobsons further reported they had received no money from Respondent and that they were unaware that a settlement had been accepted and payment issued. Complainant also learned that Fern Sunderland, died on October 19, 2013, and that Sharon Dobson was her caretaker. As far as Ms. Dobson knew, Ms. Sunderland was never contacted by Respondent and told about the settlement. The Dobsons further reported that Respondent told them they would not get their settlement money until the City of Tulsa began work on their property.

¶ 28 Complainant's review of Respondent's bank records indicate that Respondent deprived the Dobsons and Ms. Sunderland of the funds Curthoys accepted on their behalf and Respondent misappropriated these funds for his own benefit. Complainant asserts that Respondent did not enter into a proper and ethical business transaction with the Dobsons or Ms. Sunderland for the loan of funds and he failed to promptly deliver funds to his client.

¶ 29 Complainant alleges Respondent's conduct thereby violates the mandatory provisions of Rules 1.15(a) and (d), and 8.4(c) ORPC and Rule 1.3 RGDP and warrants the imposition of professional discipline.

### COUNT IV: (Miscellaneous)

¶ 30 Complainant has learned that Respondent has not paid taxes to the IRS for several years and that he has a pending bank levy in excess of $350,000.00. The IRS has also seized a condominium from Respondent in recent months along with other legal settlements entered in Respondent's other condemnation cases. In the case *Independent School District No. 5 v. Patrick Taylor and Marsha/eta Taylor et al.*, Tulsa County District Court, Case Number CJ–2007–6206, the IRS filed a Notice of Levy and informed the Plaintiff that any attorney fee award must be paid directly to the IRS. Counsel for Plaintiff, Roger Eldredge, further informed Complainant that there is a pending appeal in this case regarding Respondent's efforts to collect attorney fees on behalf of his clients as permitted by statute. Plaintiff is objecting to this request on the basis that Respondent's contingency fee contract with his clients provides for an unlawful and unethical contingency fee in excess of 50%. This dispute is now pending before the Court of Civil Appeals, Case No. DF–113268.

¶ 31 Complainant's investigation also found that in 2013, Tulsa attorney Bruce Spence registered a foreign judgment in excess of $209,004.04, with a daily interest of $45.80 accruing each day. That case is styled as *Douglas Allen Payne v. Robert J. Nichols,* Tulsa County District Court, Case Number CV–2013–1321. The Plaintiff has filed several garnishment summons against Respondent and expects to collect the monies owed from other pending litigation and settlements.

### ADDITIONAL INVESTIGATIONS

¶ 32 Attached to Complainant's Application for Order Approving Resignation is a copy of Respondent's affidavit. In his affidavit, he acknowledges that the Complainant has identified five additional investigations which allegedly involve his mishandling or misappropriation of client funds. These five investigations are described by Respondent as follows:

*ODOT v. Sawhorse Investments and Midstate Traffic Control, CJ–2011–7353, Tulsa County District Court:* Steven Wells (Wells) is the owner of both defendant corporations and both entities were represented by Robert Nichols (Nichols). In August of 2015, the OBA contacted Wells and informed him that on June 28, 2012, Nichols received a check made out to Sawhorse Investments and Nichols in the amount of $18,542.00. Wells was unaware that money was disbursed to Nichols and he never received that money. Wells explained that he paid Nichols with a retainer and so the entire amount of the disbursement was owed to him as the client. The OBA was able to confirm receipt of the Wells retainer and deposit into Nichols' IOLTA.

*OG & E v. Homer M. Cain & Ginger Cain, CV–2011–29, Pawnee County District Court:* The Cains hired Nichols to represent them in this matter during the just compensation phase of the proceedings and at jury trial. OG & E prevailed at the jury trial and then demanded the return of the just compensation award held by the district court. When the Cains tried to repay the amount from the funds placed with the district court, they learned that Nichols had $37,000.00 disbursed to him by the district court without client approval.

*ODOT v. Tulsa Kampground, Inc., CJ–2008–43, Rogers County District Court:* The OBA contacted Paul Wilson in August of 2015 to discuss two cases wherein Nichols represented Wilson. Wilson explained that the Tulsa County representation was resolved and he received the money he was owed by Nichols and ODOT. However, in the Rogers County case, Wilson received his share of the commissioner's award but then gave Nichols approximately $125,000.00 for "future litigation costs." Despite making that payment, Nichols failed to pursue the future litigation and failed to provide a detailed accounting and a full or partial refund of the retainer.

*ODOT v. Stanton B. Noble, CJ–2009–193, Tulsa County District Court:* Stan Noble was interviewed by the OBA in August of 2015. Noble and his counsel Mike Hilsabeck reported that Nichols distributed the just compensation proceeds timely. However, in January of 2015, Nichols solicited

Noble to pay him a $15,000.00 retainer for work related to the pending jury trial of the matter. Noble paid Nichols the retainer, but Nichols has failed to provide an accounting of this money. Noble is unaware of any work performed or of any court filings prepared by Nichols in this matter.

***Board of County Commissioners of Tulsa County v. Dr. William Paul Sommer, CJ-09-8409, Tulsa County District Court:*** Sommer hired Nichols to represent him in this matter in 2009. On April 9, 2010, Nichols received a check in the amount of $40,000.00 as just compensation for the Sommer property. The check was made out to both Nichols and Sommer. Nichols endorsed and deposited the check into his IOLTA. However, Nichols never disbursed Sommer's share of the proceeds but instead kept all of the money for himself. Sommer died in 2013. Sommer's family confirmed that Nichols failed to distribute any of the money disbursed by the Board of County Commissioners.

¶ 33 Respondent is aware that the burden of proving the alleged violations is on the Complainant. However, he waives any and all right to contest the allegations in this bar disciplinary proceeding.

¶ 34 Respondent is aware that the approval or·disapproval of his resignation is within the discretion of the Supreme Court of Oklahoma, per Rule 8.2, RGDP.

¶ 35 Respondent states he is aware of the provisions of Rule 9.1, RGDP, and he, along with the assistance of the court appointed receiver, Fred Dorwart, have previously complied with all provisions of Rule 9.1 within twenty (20) days following the date of this Court's Order of Interim Suspension issued July 29, 2015. However, the record reflects this Court issued an Order on August 20, 2015, to extend the deadline for providing notice to his clients at Respondent's request. The deadline set for compliance in that Order was August 27, 2015. On September 3, 2015, this Court issued another Order concerning non-compliance with the August 20, 2015, Order and required a status report be made by the Complainant. It was not until September 23, 2015, that we received the Complainant's status report informing this Court that formal written notice had been satisfactorily provided to all of Respondent's pending clients.

¶ 36 Respondent·recognizes, understands and agrees that he may not apply for reinstatement of his legal license (and of his membership in the Bar) before the expiration of five years from the effective date of this order and may only be reinstated upon full compliance with the conditions and procedures prescribed by Rule 11, RGDP.

¶ 37 Respondent acknowledges that his actions may result in claims against the Client Security Fund and agrees to reimburse the Fund for any disbursements made or to be made because of his actions, with applicable statutory interest, prior to the filing of any application for reinstatement.

¶ 38 Respondent acknowledges he is responsible for reimbursement of the costs incurred by the Oklahoma Bar Association in the investigation and prosecution of this matter. The Oklahoma Bar Association filed an Application to Assess Costs itemizing costs in the amount of $6,105.56.

¶ 39 Respondent's resignation during the pendency of disciplinary proceedings is in compliance with Rule 8.1, RGDP.

¶ 40 Respondent's name and address appear on the official Bar roster as: Robert John Nichols, OBA No. 6669, 8252 South Harvard, Suite 155, Tulsa, Oklahoma 74137 and, c/o Fred Dorwart, Receiver, Old City Hall, 124 East Fourth Street, Tulsa, Oklahoma 74103-5010.

¶ 41 THE COURT THEREFORE ORDERS THAT the resignation of Robert John Nichols·tendered during the pendency of disciplinary proceedings is approved; the Respondent's name is stricken from the Roll of Attorneys and he may not apply for reinstatement of his license to practice law (and of his membership in the Bar) before the lapse of five years from the date of this order; repayment to the Client Security Fund for any money disbursed (or to be disbursed) because of Respondent's conduct

shall be a condition of Respondent's reinstatement; Respondent shall comply with Rule 9.1, RGDP, to the extent he has not already met the requirements of this Rule.

¶ 42 It is further ordered that the Respondent pay costs in the amount of $6,105.56. Respondent is ordered to pay such costs within ninety (90) days from the date of this Order. Any consideration of any future Rule 11 petitions is conditioned upon such payment.

¶ 43 CONCUR: COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, GURICH, JJ.

¶ 44 DISQUALIFIED: REIF, C.J.